UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**HENRY MINOR**                                               **CIVIL ACTION**

**VERSUS**                                                    **NO: 09-932-SS**

**DOW CHEMICAL COMPANY AND**
**UNION CARBIDE CORPORATION**

## ORDER AND REASONS

Before the Court is the motion of the defendants, The Dow Chemical Company ("Dow") and Union Carbide Corporation ("UCC"), for summary judgment on all of the claims of the plaintiff, Henry Minor ("Minor"). For the reasons described below, the motion for summary judgment is granted.

## PROCEDURAL BACKGROUND

On October 15, 2009, Minor filed a petition in state court against Dow and UCC for damages as a result of alleged unlawful and wrongful discrimination in employment under La. Rev. Stat. Ann. §23:301. Minor alleges that at the time of his discharge he was 55 years old and that he was discharged because of his age. Rec. doc. 1. On November 9, 2011, the defendants removed the petition to federal court. They alleged original jurisdiction pursuant to 28 U.S.C. § 1332. Rec. doc. 1. The parties consented to proceed before the assigned Magistrate Judge. Rec. doc. 12. On January 18, 2011, the defendants moved for summary judgment. Rec. doc. 15. The motion was fully briefed. Rec. docs. 24, 28, 31 and 32.

## UNDISPUTED FACTS

Minor was born in 1953. He was first employed as an Operator with UCC in 1975 at its

Oxide 1 unit.[1] He transferred to the Oxide 2 unit in 1976 for its commissioning and startup. Minor Dep. Exhibit 2. He remained with Oxide 2 as an Operator until April 2007. Id. During his employment at UCC, he earned qualification ratings in the four basic Operator jobs at the two units: (1) inside glycol (derivatives); (2) outside glycol (derivatives); (3) inside reaction; and (4) outside reaction.[2] The Operator position required shift work. Minor Aff. at 2.

A Technical Advisor is in charge of maximizing the safe output of the plants. He acts as a consultant or advisor responsible for providing technical support to the Operators and technical staff within the units.[3] This position did not require shift work. Minor Aff. at 5. The Operators and Technical Advisors reported to the Production Leader. Minor Aff. at 2. Prior to 2006, Minor applied several times to be promoted to a Technical Advisor position, but was never selected. Minor Dep. at 287.

In June 2006, Jon Pucheu became the Production Leader for the two Oxide units. He also became Minor's immediate supervisor. Pucheu was born in 1963. Pucheu Aff. at 1. When Pucheu became Minor's supervisor, Pucheu asked him how long he intended to work for UCC. Rec. doc. 15 at 9.

Within a year after Pucheu became the Production Leader, a Technical Advisor position became available. Minor was the only applicant for the position. Pucheu Aff. at 1-2. Pucheu selected Minor for the Technical Advisor position in April of 2007. Minor Dep. Exhibit 2. Minor

---

[1] Deposition of Henry Minor at pages 10 and 50. The deposition is Exhibit 2 to defendants' motion for summary judgment (Rec. doc. 15). Citations to the deposition are referred to as Minor Dep. at –. Citations to the exhibits to Minor's deposition are referred to as Minor Dep. Exhibit –.

[2] Affidavit of Henry Minor at 1. The affidavit is Exhibit 1 to Minor's opposition to the motion for summary judgment (Rec. doc. 24). Citations to the affidavit are referred to as Minor Aff. at –.

[3] Declaration of Jon Pucheu under oath at page 2. The declaration is Exhibit 1 to defendants' motion for summary judgment (Rec. doc. 15). Citations to the declaration are referred to as Pucheu Aff. at –.

2

was 53 years of age when Pucheu selected him for this promotion. Minor Dep. at 10. When Pucheu promoted Minor he again asked him a second time how long he intended to work for UCC. Rec. doc. 15 at 9.

Four months later Pucheu met with Minor. Minor Dep. at 120-130, and Minor Dep. Exhibit 4. There were notes of the meeting in Pucheu's handwriting which Minor received on August 23, 2007. Minor Dep. Exhibit 4. They included the statements: "[h]olding your own so far" and "[let's step up to the next level." Id. They were seven numbered comments, one of which stated, "[y]ou are now in a leadership role. Not always going to be 'friends.' Champion things!" Id. Minor admits that Pucheu discussed these issues with him. Minor Dep. at 120-130.

On March 6, 2008, Pucheu placed Minor on a performance improvement plan ("PIP"). Minor Dep. Exhibit 5. The notification states that, "you have not met expectations in fulfilling the TA role and demonstrating the necessary levels of Leadership and Initiative." Id. UCC policy requires that when an employee is performing his job tasks unsatisfactorily his supervisor is to advise him of problem areas and place him in a PIP in order to give the employee an opportunity to know and understand points of criticism and to improve and remedy the points through periodic review of the PIP. Minor Aff. at 3. The notification stated that if Minor failed to reach a satisfactory level of performance at any time during the PIP, he would be subject to further action, up to and including separation from employment. Minor Dep. Exhibit 5. As part of the PIP, Pucheu gave Minor a spreadsheet listing the areas in which he saw a deficiency or performance gap. Pucheu explained that Minor was supposed to take the spreadsheet and come up with his own plan for

3

addressing the performance gaps.[4]

When Pucheu placed Minor on the PIP, Pucheu asked him a third time how long he intended to work for UCC. Rec. doc. 15 at 9. Minor responded that with a child in college, he expected to be working for at least six to eight years. Minor Aff. at 4.

In October 2008, Pucheu informed Minor that he was being moved back to an Operator job in Oxide 2. Pucheu Aff. at 4. He was replaced as Technical Advisor by a younger, less experienced Operator, Cal Cancienne, who at the time was either younger than the protected age group, 40 years, or barely into his early 40s. Minor Aff. at 4. Pucheu did not reduce Minor's pay, but rather actually made more money after he was moved back to the Operator job. Minor Dep. at 212-213.

The demotion to Operator meant a return to shift work. Minor Aff. at 5. Minor objected to the demotion and wrote memos explaining why he felt that Pucheu's decision was wrong. In none of the communications does Minor contend that he believed he was moved back to the Operator job because of his age. Minor Dep. Exhibits 14 and 15.

Minor began working again as an Operator in the Oxide 2 plant in October 2008. Minor Dep. at 289. During his tenure as a Technical Advisor, a new control system was installed in Oxide 2. Because of this and because Minor had been out of the Operator position for a year and a half, Minor had to re-train in the four basic Operator jobs. Operators are required to be certified in three of these four jobs. Pucheu Aff. at 4-5, and Minor Dep. at 83-84. Certification and proficiency in all four jobs is obviously preferable. Pucheu Aff. at 4. Minor did not like the inside glycol job. He informed UCC that he did not want to re-train for it and did not want to maintain his certification for it after he was put back as an Operator. Minor Dep. at 354-355, and Minor Dep. Exhibit 24.

---

[4] Deposition of Jon Pucheu at 40-42. The deposition is exhibit 3 to defendants' motion for summary judgment (Rec. doc. 15). Citations to the deposition are referred to as Pucheu Dep. at –.

4

UCC was not happy with his decision. Minor Dep. at 355.

A few months after Minor returned to work as an Operator, Pucheu was notified that there would be mandatory layoffs due to economic decline and the Oxide 2 unit would be shut down completely. He was required to reduce the number of employees in technical jobs at both Oxide units by approximately 20%. This included eight Operators or technicians. Because one technician retired, Pucheu laid off seven Operators, including Minor. Pucheu Aff. at 4.

All of the other employees selected for layoff were younger than Minor, and two were in their twenties. There were eight other Operators in their fifties besides Minor. Pucheu retained all eight of them. Pucheu Aff. at 6. UCC reduced its work force at the St. Charles site by approximately 80 employees. Pucheu Aff. at 5.

Pucheu informed Minor of his layoff in March 2009. He was paid through the end of May. Minor Dep. at 34-37. Minor was 55 years old at the time. Minor Dep. at 10.

## ARGUMENTS OF THE PARTIES

The defendants contend that Minor has no evidence to establish a *prima facie* case of age discrimination. While acknowledging that Minor was a member of the protected class, that he was laid off, and that he was qualified to assume another position, they contend that he has no evidence from which a fact-finder might reasonably conclude that the defendants intended to discriminate because of his age. They argue that instead of presenting such evidence, Minor bases his claim on his subjective belief that he was terminated on account of his age because he believes that he was an excellent performer. They urge that neither Minor's opinion about his own performance nor his subjective belief as to the cause of his termination are competent evidence giving rise to an inference of age discrimination. They contend that Pucheu's questions about how long Minor intended to

5

work do not evidence bias and are stray remarks too remote in time to constitute evidence of age discrimination. Pucheu testified that he asked the question of all persons reporting to him as part of his succession planning responsibilities. The defendants urge that because of Pucheu's age (47) at the time of the decision to terminate Minor, there is an inference that age discrimination was not the motive.

The defendants argue that Minor has no evidence to sustain his ultimate burden of proof because Pucheu articulated legitimate reasons for his decision and Minor has no evidence to prove the reasons are pretextual. The defendants cite: (1) the decision to reduce the workforce by 80 employees; (2) Pucheu made his decision based on job skills and certifications, the needs of the organization going forward, leadership skills, initiative and teamwork; and (3) Minor's refusal to re-train for the inside glycol job. Finally, the defendants contend that Pucheu was not targeting older workers. Rec. doc. 15.

Minor responds that there is evidence of age discrimination sufficient to present a *prima facie* case. He cites: (1) Pucheu's questions concerning how long he intended to remain working; (2) a similar inquiry by Billy Raymond; (3) the close proximity between one of these inquiries and his termination; (4) his replacement in the Technical Advisor position by Cancienne, who was outside the protected class; and (5) the limited authority of a Technical Advisor. Rec. doc. 24. He urges that the defendants failed to produce his personnel file, so there is a presumption that their evaluations of his employment for 32 years would be favorable. He contends that there are genuine issues of material fact. Rec. doc. 31.

The defendants reply that the Court should not consider statements made in Minor's affidavit concerning questions regarding how long he intended to work as they are contradicted by his

6

deposition testimony. Rec. doc. 28. The defendants also present evidence that the personnel file was produced. Rec. doc. 32 (Exhibit A).

Minor's petition describes a single claim for wrongful discharge in March 2009. He alleges that he suffered damages as a result of the defendants' "wrongful discharge. . ." and he was discharged because of his age in violation of Louisiana law. Rec. doc. 1(Attachment at 2). His petition does not contain any allegations that he was wrongfully demoted in October 2008. His opposition to the defendants' motion for summary judgment responds, in part, by urging that he was wrongfully demoted. Although Minor did not seek leave to amend his petition, it will be treated as though he alleges two claims: (1) wrongful demotion; and (2) wrongful discharge.

## SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56 provides in pertinent part that summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189 (1990). To that end, the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. Wyatt v. Hunt Plywood, 297 F.3d 405, 409 (5th Cir. 2002). Where the record taken as whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Washington v. Allstate Ins. Co., 901 F.2d 1281 (5th Cir. 1990).

Furthermore, the party moving for summary judgment must "demonstrate the absence of a

genuine issue of material fact," but need not negate the elements of the nonmovant's case. Celotex, 106 S.Ct. at 2553; see Lujan, 110 S. Ct. at 3187. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Celotex, 106 S.Ct. at 2553-54. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Kee v. City of Rowlett Texas, 247 F.3d 206, 210 (5th Cir. 2001).

This burden is not satisfied with "some metaphysical doubt as to the material facts," Matsushita, 106 S.Ct. at 1356, by "conclusory allegations," Lujan, 110 S. Ct. at 3180, by "unsubstantiated assertions," Hopper v. Frank, 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir.1994). The court resolves factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. See Lujan, 110 S. Ct. at 3188. Summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir.1993). If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted. See Evans v. City of Bishop, 238 F.3d 586, 588-89 (5th Cir. 2000).

In Fierros v. Texas Dept. of Health, 274 F.3d 187 (5th Cir. 2001), the Fifth Circuit cautioned that summary judgment is not favored in claims of employment discrimination and that the Supreme Court in Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 2110

8

Case 3:09-cv-00932-SS   Document 34   04/10/12   Page 8 of 17

(2000), emphasized the paramount role that juries play in Title VII cases, stressing that in evaluating summary judgment evidence, courts must refrain from the making of credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, which are jury functions, not those of a judge. Fierros, 274 F.2d at 190-91.

## MINOR'S AFFIDAVIT

Minor was deposed on September 28 and November 22, 2010. Rec. doc. 15(Exhibit 2). He submitted an affidavit with his opposition to the defendants' motion for summary judgment. Rec. doc. 24 (Exhibit 1). The defendants contend that Minor cannot create a fact issue to preclude summary judgment by submitting an affidavit that contradicts his prior deposition testimony. The questions raised are how many times Pucheu asked Minor how long he intended to work at UCC, when the questions were asked, and whether Billy Raymond asked Minor how long he intended to work at UCC.

The pertinent deposition testimony is as follows:

Q.  Okay. . . . You said earlier that you felt you were discriminated against because of your age. What is the first time or what's the first event that happened to you that made you feel like you were being discriminated against?

A.  Like I said, for my age, the first time was when I was called in and asked how much longer I was going to stay; okay? The second time was when I got the job of TA and was called in there and asked again, you know, how much longer I was planning on staying.

Q.  Okay. And the first time, I think you said earlier, is when John Pucheu first became the - -

A.  Correct.

Q.  - - Production Leader. And you were an Operator then. Nothing happened to your job at that point.

9

> A. No.
>
> Q. Okay. And the second time something happened to your job, but you were actually getting a promotion.
>
> A. Right.
>
> \* \* \*
>
> Q. Uh, he - - he said that again when he gave you the Action Plan?
>
> A. Yeah. That's what I'm saying, there was, like, there were three times I can tell you specifically that he asked me that question.
>
> Q. Okay. And that's what I'm trying to get - - I mean, you told us earlier when he first became - -
>
> A. When he first became - -
>
> Q. - - Production Leader. Second when he promoted you.
>
> A. Correct.
>
> Q. And the third time is when he gave you the Action Plan.
>
> A. That's correct. Exactly.
>
> \* \* \*
>
> Q. Was there any other thing that Jon Pucheu or anyone else did or said that leads you to believe that your age was a factor in the decision to either demote you or to lay you off?
>
> A. No; not that I recall.

Minor Dep at 69, 70, 118 and 364.

In his affidavit Minor stated:

> That substantially contemporaneously with this time period (in March, 2008) Billy Raymond, a "Coach", asked him whether or not "[i]f they [the company] offered [him] a package would [he] take it in exchange for retirement. . ." company policy being, "to encourage retirement of high dollar employees as part of its

10

reduction-in-force program";[5]

* * *

That throughout this period of time Pucheu repeatedly asked how long he intended to remain in his employment at UCC, to which he responded, each time, that with a child in college he expected to be working for at least the next six to eight years.

* * *

That in February, 2009 he was asked by Pucheu whether or not he wished to retire with the full retirement package to which he was eligible as the result of his 32 year tenure with the company, to which he responded as he had to the earlier inquires concerning how long he intended to remain an employee, that he had children in college and that he expected to work for the next to six to eight years;

That shortly thereafter Pucheu informed him of his layoff in March, 2009;

Minor Aff. at 3-5.

Instead of three instances when Pucheu asked him about how much longer he intended to work, the affidavit states that Pucheu "repeatedly" asked him the question. In the affidavit the last time the question is asked is not in March 6, 2008, as reflected by the deposition testimony, but a year later just before he was discharged in March 2009. Finally, it is not just Pucheu who asks him how much longer he intended to work, but also Billy Raymond.

In Copeland v. Wasserstein, Peralla & Co. Inc., 278 F.3d 472 (5th Cir. 2002), the Fifth Circuit stated:

> [W]hen the sole evidence purporting to create a genuine issue of material fact and thus to preclude summary judgment is an affidavit that conflicts with deposition testimony, we have required an explanation of that conflict. This jurisprudential rule has evolved from cases in which opposing parties had provided the affidavit and the deposition; but it applies equally to situations such as this, when the affidavit

---

[5] Minor's affidavit employs brackets, insertions and quotation marks to describe what Raymond is alleged to have said, but there is no affidavit or other testimony from Raymond from which the alleged statement is drawn. Rec. doc. 24 (Exhibit 1 at 3-4).

11

contradicts prior sworn testimony by the affiant himself.

Id. at 482 (citing Thurman v. Sears, Roebuck & Co., 952 F.2d 128, 137, n. 23 (5th Cir. 1992) ("[A] nonmovant cannot defeat a summary judgment motion by submitting an affidavit which contradicts, without explanation, the nonmovant's previous testimony in an attempt to manufacture a disputed material fact issue.") See also Albertson v. T.J. Stevenson & Co., Inc., 749 F.2d 223, 228 (5th Cir. 1984) ("[T]he nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony."); and Kennett-Murray Corp. v. Bone, 622 F.2d 887, 894 (5th Cir. 1980).

Minor's affidavit contradicts his prior deposition testimony. Although Minor submitted a further memorandum, he has not provided any explanation for the conflict. The inference is that Minor is attempting to manufacture a disputed issue of fact as to the number of times he was asked about how long he intended to work at UCC, who asked him the question, and when was the last time the question was put to him. Minor's affidavit does not create an issue of fact as the testimony in his deposition.

## ANALYSIS

Pursuant to McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 1824 (1973), the plaintiff must carry the initial burden of establishing a *prima facie* case of age discrimination. To do so, a plaintiff must prove that: (1) he is within the protected age group; (2) that he has been adversely affected - discharged or demoted - by the employer's decisions; (3) he was qualified to assume another position at the time of the discharge or demotion; and (4) employees outside of the protected class were more favorably treated-for example, by being hired to a job for which the plaintiff was turned down or by replacing the plaintiff in the job from which the plaintiff was

12

discharged. Where there is a reduction in force, the final requirement is that the plaintiff also must produce evidence, circumstantial or direct, from which a fact finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue. Amburgey v. Corhart Refractories Corp., Inc., 936 F.2d 805, 812 (5th Cir., 1991). For purposes of this analysis, it is assumed that Minor established a *prima facie* case of age discrimination for both the demotion claim, where he was replaced by a person outside the protected class, and the discharge claim, where there was no replacement.

At the next step the burden shifts to the defendants to produce a legitimate, non-discriminatory reason for its decision. Their burden at this initial stage is one of production only. That is, the defendants need not persuade the Court that their reasons are legitimate; they need only come forward with some explanation which, if believed, would be legitimate and non-discriminatory. Bodenheimer v. PPG Industries, Inc., 5 F.3d 955, 958 (5th Cir. 1993),

Pucheu states that in March 2008 Minor's "performance as TA was simply not satisfactory, particularly his leadership skills and initiative." Pucheu Aff. at 3. While he made some progress on his PIP, his "leadership skills and initiative did not improve." Id. In October 2008, Pucheu demoted Minor to Operator. Id. at 4. A few months later he learned that the Oxide 2 unit would be shut down and eight technical people had to be laid off. While he was able to retain a few operators, Minor was not retained. Id. at 5. Pucheu did not consider Minor for the remaining job because "Minor chose not to re-train and wanted to let his certification lapse for inside glycol. . . ." Id. In determining who would be selected for the layoff, Pucheu "analyzed many factors, including technical skills, initiative, leadership, teamwork, and the number of certifications and jobs the operators could perform." Id.

13

Minor urges that: (1) only the Production Leader had any authority to lead at all; and (2) while as Technical Advisor he could cajole, and support in cooperative ways, he was specifically not authorized to request or order an Operator to do anything. Rec. doc. 24 at 7. Minor ignores that in August 2007, he received Pucheu's handwritten memorandum which included the statement that, "[y]ou are now in a leadership role." Minor Dep. Exhibit 4. On March 6, 2008, Minor received notification of the PIP. It stated, "you have not met expectations in fulfilling the TA role and demonstrating the necessary levels of Leadership and Initiative." Pucheu Aff. (Exhibit 1-B).[6] These written notices to Minor in August 2007 and March 2008 clearly demonstrate that Pucheu considered leadership and initiative part of the responsibility for a Technical Advisor.[7] Minor did not dispute these statements when they were made. Assuming that Minor, as a Technical Advisor, had no authority to order an Operator to perform his or her job, there is more to leadership than giving orders. After his demotion, Minor chose not to re-train on the inside glycol job and maintain his certification for it. The defendants have articulated legitimate, nondiscriminatory reasons for Minor's demotion in October 2008 and in selecting him for the reduction in force in March 2009.

Once the employer has met its burden of production, the plaintiff's burden of persuasion then arises. Bodenheimer, 5 F.3d at 957. To establish a disparate-treatment claim, a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision. Gross v. FBL Financial

---

[6] Pucheu acknowledges that Minor made some progress on the PIP, but he received negative feedback about Minor from others. A turnaround and production coordinator and an operations leader sent Pucheu information on problems with Minor's performance as TA. Pucheu Aff. at 3-4 with Exhibits 1-E and F.

[7] Minor contends that the defendants did not produce anything contemporaneous to support the leadership/teamwork pretext. Rec. doc. 31 at 3-4. The August 2007 memorandum and the March 6, 2008 PIP notification are contemporaneous support of the leadership/initiative issue.

14

Services, Inc., 557 U.S. 167, 129 S.Ct. 2343, 2350 (2009). Minor is only required to tender factual evidence that would lead a jury to reasonably conclude that the defendants' reasons for the demotion and discharge are a pretext for age discrimination. Bodenheimer, 5 F.3d at 958.

Minor contends that the defendants intent to discriminate against him is evident from the questions to him about how long he planned to work. Pucheu asked Minor the question on three occasions, the last of which was in March 2008, when Minor was placed on a performance improvement plan about a year before his discharge. In Moore v. Eli Lilly & Co., 990 F.2d 812 (5th Cir. 1993), cert. denied 114 S.Ct. 467 (1993), the Fifth Circuit stated:

> Moore asserts that when Yelverton learned that he was going to become the supervisor of the division in which Moore worked, Yelverton asked the outgoing supervisor a series of questions concerning the ages of the current employees and whether any of the older employees planned to retire soon. These questions, however, cannot be said to represent, as Moore asserts, a discriminatory intent by Yelverton. Without more, they merely demonstrate a new supervisor's reasonable inquiries about the ages of the members of his work force and their known plans for the future-facts on which to gauge the anticipated longevity of his crew.

Id. at 818 (footnote omitted). The questions posed by Pucheu do not demonstrate that the defendants intended to discriminate against Minor. In Auguster v. Vermilion Parish School Bd., 249 F.3d 400, 405 (5th Cir. 2001), the Fifth Circuit found that comments made nearly a year before the decision not to renew an employment contract were unrelated to the decision.

Minor points to his replacement, Cancienne, who is outside the protected group, as evidence of the intent to discriminate against him. He ignores, however, that the person who promoted him to Technical Advisor, Pucheu, is the same person who made the decision to demote him. "The same actor inference creates a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue."  Spears v.

15

Patterson UTI Drilling Co., 337 Fed. Appx. 416, 421-22 (5th Cir. 2009).[8]

Minor testified that he believed he was discharged on account of his age because he was an excellent performer in his years of service with the defendants. Minor Dep. at 155 and 360. In Elliott v. Group Medical & Surgical Service, 714 F.2d 556 (5th Cir. 1983), *cert. denied* 104 S.Ct. 2658 (1984), the Fifth Circuit refused "to hold that a subjective belief of discrimination, however genuine, can be the basis of judicial relief." Id. at 567; see also Waggoner v. City of Garland, Texas, 987 F.2d 1160, 1164 (5th Cir. 1993). In Bodenheimer, 5 F.3d at 959, the Fifth Circuit regarded the plaintiff's attempt to equate years served with superior qualifications as unpersuasive.

Minor states that throughout his tenure with the defendants his job performance was, until August, 2007, highly evaluated on its merits, so much so that he was commonly known as the "go to" Operator for problems that would arise. Minor Aff. at 2. It is noted, however, that before Pucheu became Production Leader in 2006, Minor applied several times to be promoted to a Technical Advisor position but he was never selected.

After Minor's demotion and prior to the defendants' decision to close the Oxide 2 unit, Minor informed the defendants that he did not want to re-train on and did not want to maintain his certification for the inside glycol job. Minor Dep at 354-355, and Minor Dep. Exhibit 24. He knew that the defendants were not happy with his decision. Minor Aff. at 355.

In 2009, the defendants made the decision to close down the Oxide 2 unit. Approximately 80 people, including Minor, lost their jobs. A reduction in force is a legitimate non-discriminatory

---

[8] The same actor inference is not mandatory. It weighs against the claim that the reason for Minor's demotion was his age. Spears, 337 Fed. Appx. at 421-22. The Fifth Circuit refused to establish a rule that no inference of discrimination could arise under the same actor circumstances. Instead, it prefers to look at evidence as a whole and consider the ultimate issue: whether age was a determinative factor in the demotion decision. Haun v. Ideal Industries, Inc., 81 F.3d 541, 546 (5th Cir. 1996).

16

employment action, if true and not a pretext. Baker v. American Airlines, Inc., 430 F.3d 750, 754 (5th Cir. 2005).

As a result of the reduction in force, some persons were retained and others, including Minor, were laid off. At the time there were nine Operators 50 years old and older. Only one of these, Minor, was laid off.[9] The Operators who were laid off with Minor were all younger than he, including two who were in their twenties. Pucheu Supp. Aff. at 2. Minor offers no explanation for why Pucheu retained eight operators 50 years old and above and laid off operators younger than Minor, including two in their twenties, if Pucheu's objective was to get rid of the old Operators and keep the young Operators.

Genuine issues of material fact do not exist regarding whether defendants' reasons for demoting Minor in October 2008 and discharging him in March 2009 were merely a pretext for discrimination. Accordingly,

IT IS ORDERED defendants' motion for summary judgment (Rec. doc. 15) is GRANTED.

New Orleans, Louisiana, this 10th day of April, 2012.

								_____
								**SALLY SHUSHAN**
								**United States Magistrate Judge**

---

[9] Minor contends that at the time of his discharge, he was the only Operator that was rated and qualified in all four Operator jobs and in both Oxide 1 and Oxide 2 plants. Minor Aff. at 1. The defendants respond that: (1) Minor had not worked in the Oxide 1 unit since April 2007; (2) he was not the only person in the Oxide 2 unit with four certifications (Pucheu Supp. Aff. at 1); and (3) at least three other technical employees in the Oxide 2 unit had four certifications at the time of Minor's discharge (Id.). Pucheu Supp. Aff. refers to a Pucheu's Supplemental Declaration which the defendants submitted with their reply memorandum (Rec. doc. 28).